```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA


   HAMMETT                                  CIVIL ACTION

   VERSUS                                   NO: 11-1447

   SODEXO, INC., ET AL.                     SECTION: "J" (2)
```

### ORDER AND REASONS

Before the Court are motions for summary judgment filed by Defendants Seadrill Americas, Inc. ("Seadrill") (Rec. Doc. 23) and Sodexo Remote Sites Partnership ("Sodexo") (Rec. Doc. 24), Plaintiff Robert Hammett's oppositions to same (Rec. Docs. 27 & 28, respectively), a reply by Sodexo (Rec. Doc. 37), and a sur-reply by Hammett (Rec. Doc. 42).  Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that Seadrill's motion should be **GRANTED IN PART AND DENIED IN PART**, and that Sodexo's motion should be **DENIED**.


### PROCEDURAL HISTORY AND BACKGROUND FACTS

The instant case arises from an incident in which Plaintiff Robert Hammett struck his hand with a meat cleaver while cutting

1

chicken in the galley of the vessel West Sirius.  Hammett was employed by Sodexo as a cook or day steward, and Sodexo was an independent contractor that provided catering and bedroom services to Seadrill.  Seadrill is an offshore drilling company that provides drilling services to exploration companies.  At all material times, Seadrill owned the West Sirius, a semi-submersible offshore drilling unit operating in the Gulf of Mexico.  Seadrill hired Sodexo, a remote site catering company, to provide catering and janitorial services to the West Sirius under a World Wide Frame Agreement ("WWFA").  Sodexo, which does not own or charter any vessels, assigned Hammett to Seadrill's drilling unit, the West Sirius.  Hammett reported directly to the Sodexo "camp boss," Carol Lormand.  Seadrill did not direct or supervise the details of Hammett's work.

Hammett's accident occurred on December 3, 2010 in the galley of the West Sirius.  Hammett testified in his deposition that he and one other Sodexo employee were the only two workers in the galley at the time of the incident. Rec. Doc. 24-2, at 4-5; Rec. Doc. 27-2, at 1.  Before the accident, Hammett had begun to thaw frozen chickens.  He decided to divide approximately 9 to 11 whole chickens with a Chinese-style meat cleaver.  While cutting the last chicken, which was lying flat on a cutting

board, Hammett's hand or the chicken slipped, causing Hammett's hand to enter the strike zone of the cleaver.  The cleaver struck and lacerated Hammett's right thumb.  Although he is right-handed, Hammett was using the meat cleaver in his left hand at the time of the accident.  Hammett alleges that the eight-inch cleaver nearly severed a portion of his hand, resulting in disabling injury.

Following the injury, Hammett filed suit against Sodexo and Seadrill on June 20, 2011.  Plaintiff's complaint is designated as a Rule 9(h) admiralty claim and seeks relief under the Jones Act and general maritime law.  Rec. Doc. 1, at 1.  He seeks recovery of past and future mental and physical pain and suffering damages, permanent disability damages, past and future loss of wages, impairment of earning capacity damages, past and future medical expenses, and other damages to which he may be entitled.  Id. at 2.  He seeks past due maintenance and cure, compensatory damages, attorney's fees, costs, penalties, and punitive damages based on the defendants' alleged willful and wanton failure to pay adequate maintenance and cure.  Id. at 2-3.  Hammett asserts that he used the meat cleaver because there were limited options available in the galley for cutting the chickens, and the cleaver was the tool best suited to accomplishing the

task.  He asserts that he used the only gloves made available to him, which were inadequate.  Hammett also asserts that he did not have adequate assistance at the time of the accident as his galley hand was not a cook, but rather a dishwasher.  The defendants filed the instant motions for summary judgment seeking dismissal of Hammett's claims.

## THE PARTIES' ARGUMENTS

Defendants Seadrill and Sodexo both argue that Hammett's claims under the Jones Act and for maintenance and cure should be dismissed.  Sodexo argues that Hammett is not a seaman, as a matter of law.  It avers that because Hammett was an offshore cook assigned to a variety of platforms and vessels on a call-out basis, he was not more or less permanently assigned to an identifiable fleet of vessels and therefore is not a seaman. During his employment with Sodexo, Hammett was assigned to various fixed platforms and vessels that were not under common ownership or control.  Sodexo alleges that Hammett spent only 13% of his time employed by Sodexo on the West Sirius.  Sodexo points to Hammett's deposition testimony in asserting that Hammett worked as a cook at the following worksites:  the Shell Mars (Shell platform), the HOS Achiever (Hornbeck flotel vessel), the Perdido (Shell platform), an Otto Candies flotel vessel, the

Atlantis (BP platform), the Brutus (platform), the land-situated BP crisis center of the *Deepwater Horizon* oil spill, and the West Sirius (Seadrill drilling vessel).  Therefore, Sodexo argues that Hammett is not a seaman because he lacked the necessary connection to a vessel or an identifiable fleet of vessels under common ownership or control of his employer.

   Hammett argues that he is a seaman because he had the requisite connection to a vessel or fleet of vessels.  He asserts that in addition to his work aboard the West Sirius, he worked aboard the Achiever, the Perdido, the Otto Candies, the Brutus, the Mars, and the Atlantis.  He states that he lived, ate, and worked aboard these vessels; and that during the 26 months leading up to the accident, he spent nearly 14 months aboard the Achiever, 3 months aboard the Otto Candies, and 2-3 months aboard the Brutus.  Thus, he argues, where 53% of his employment was spent aboard the Achiever and 73-76% of his employment was spent aboard offshore vessels generally, he had a substantial connection to a vessel in both duration and nature.  Hammett also argues that if he is not a seaman, Sodexo is in violation of the Longshore and Harbor Workers' Compensation Act (LHWCA) because Sodexo did not submit notice of injury to the deputy commissioner and did not pay any LHWCA benefits to Hammett.

Seadrill argues for the dismissal of Hammett's claims under the Jones Act and for maintenance and cure by arguing that Seadrill is not Hammett's employer. Seadrill argues that it is not Hammett's employer because it maintained no operational control over Hammett's activities. Seadrill also argues that Hammett's general maritime law negligence claim against it should be dismissed. It argues that it is not liable for the actions or inactions of its independent contractor, Sodexo. Seadrill argues that the principal, Sodexo, was responsible for its own activities, and therefore that Seadrill did not retain operational control over the catering work that Hammett was performing at the time of his accident. Seadrill also argues that it had no duty to discover any hazardous condition or to instruct Hammett regarding use of the meat cleaver or concerning whether to wear protective hand gear.

Finally, Seadrill argues that Hammett's unseaworthiness claim should be dismissed. It argues that to the extent there was operational negligence by Hammett in choosing to use a meat cleaver or negligence by Sodexo in allowing Hammett to use the cleaver, it was an isolated personal act that did not render the West Sirius unseaworthy. Seadrill asserts that there is no allegation that the meat cleaver or any other aspect of the

galley was defective or broken.  On the other hand, Hammett argues that there are material issues of fact, a major one being whether the meat cleaver was brought on board the West Sirius by Sodexo or was provided by Seadrill.  Hammett argues that the vessel was rendered unseaworthy by an unsafe working condition, in that improper equipment was available for preparing meals in the galley.  Hammett argues that even if Sodexo brought the meat cleaver aboard the vessel, Seadrill became responsible for the unseaworthy condition it created once aboard the West Sirius.

## DISCUSSION

**A.   Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."  Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008).  All

reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions.  <u>Little</u>, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party."  <u>Delta</u>, 530 F.3d 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"  <u>Int'l Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted).  The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."  <u>Id.</u> at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.  <u>See</u> <u>Celotex</u>, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by

submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See id. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. See, e.g., id. at 325; Little, 37 F.3d at 1075.

**B. Seaman Status**

Whether an injured worker is a Jones Act seaman is a mixed question of law and fact and therefore usually a jury question; however, summary judgment is mandated where the facts and the law reasonably support only one conclusion. In re Endeavor Marine Inc., 234 F.3d 287, 290 (5th Cir. 2000). A maritime worker is a seaman if (1) the employee's duties contribute to the function of the vessel or to the accomplishment of its mission and (2) the employee has a connection to a vessel in navigation, or an identifiable group of such vessels, that is substantial in terms of both its duration and its nature. Chandris, Inc. v. Latsis, 515 U.S. 347, 368 (1995). Whether a worker is a seaman is an inquiry concerning his status rather than where he worked or what he did. See SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 6-9 (5th ed.) ("[S]eaman status is not a function of *where* the worker was injured or *what* he was doing at the time, but turns on 'the nature of the seaman's service, his status as a member of the

vessel, and his relationship as such to the vessel and its operation in navigable waters.'") (quoting Chandris, 515 U.S. at 359-60) (emphasis in original).

Hammett clearly meets the first Chandris prong. Hammett prepared food, which other workers aboard the West Sirius needed as sustenance. Thus, his food preparation duties sustained the labor force that manned the drilling unit and allowed it to accomplish its mission. See Chandris, 515 U.S. at 368 ("All who work at sea in the service of a ship are eligible for seaman status.") (internal quotations and emphasis removed).

The second Chandris prong requires Hammett to demonstrate a connection to a vessel or an identifiable group of vessels that is substantial in duration and in nature. In determining whether Hammett meets this prong, the Court considers the amount of time Hammett spent working for Sodexo aboard vessels to ascertain whether he meets the jurisprudential 30% threshold.[1] Hammett worked for Sodexo in a number of different settings—on vessels, platforms, and land. Hammett references select portions of his deposition testimony and his own affidavit to assert that he has worked aboard a number of vessels in navigation. However, a

---

[1] See Chandris, 515 U.S. at 371 ("Generally, the Fifth Circuit seems to have identified an appropriate rule of thumb for the ordinary case: A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act.").

group of vessels is not an "identifiable group" for purposes of seaman status merely because the employee works on a number of different vessels; rather, the requisite nexus is common ownership or control.  Harbor Tug and Barge Co. v. Papai, 520 U.S. 548, 557 (1997).  The parties appear not to dispute that the only vessels on which Hammett worked during the relevant time period were the Achiever, the Otto Candies, and the West Sirius—none of which was allegedly subject to common ownership or control.  Therefore, for his seaman-based claims to survive summary judgment, Hammett must raise a genuine issue of material fact as to whether he has a substantial connection to one of these three vessels.

The duration of Hammett's connection with each vessel is determined in reference to his entire employment with Sodexo.[2]  This includes Hammett's post-accident employment experience.[3]

---

[2] See Barrett v. Chevron, U.S.A., Inc., 781 F.2d 1067, 1075 (5th Cir. 1986) (concluding that where "the employee's regularly assigned duties require him to divide his time between vessel and land (or platform)" and his employment duties did not significantly change during his employment, "his status as a crew member is determined 'in the context of his entire employment' with his current employer").  Hammett's employment duties as a food preparer did not significantly change during the 26 months preceding the accident.  Therefore, in addressing the 30% threshold, consideration of the entire 26 months preceding the December 3, 2010 accident is appropriate.

[3] See Phelps v. Bulk III Inc., 2007 WL 3244723, at *3 (E.D. La. Nov. 1, 2007) (where plaintiff was injured after five days of employment and met the 30% threshold as to pre-injury employment, the court would consider the "worker's intended relationship as if he had continued his employment uninjured"); Grothe v. Central Boat Rentals, Inc., 2008 WL 2783457, at *3 (S.D. Tex. July 15, 2008) (citing to precedent permitting court to consider

Hammett could not recall precisely when he started working for Sodexo, though it was suggested his employment began as early as October 2008. Rec. Doc. 28-2, at 5. Accepting October 2008 as Hammett's Sodexo start date for summary judgment purposes, his injury aboard the West Sirius occurred about 26 months later, on December 3, 2010.

There is a genuine issue of fact regarding whether Hammett had a substantial connection to the West Sirius. The Court's review of the record evidence reveals that Hammett remained aboard the West Sirius after the December 2010 accident until at least July 2011. See Rec. Doc. 24-3, at 67-75 (Sodexo work records showing that after a short period of "light duty," Hammett was assigned to the West Sirius from December 20, 2010 until July 29, 2011). The work records end with July 2011, and it is unclear what Hammett's employment experience, if any, was between July 2011 and September 29, 2011, when he began working

---

plaintiff's intended relationship with employer, finding that where plaintiff was permanently reassigned to a vessel and worked there only for two days, he could satisfy the substantial duration test); cf. Barrett, 781 F.2d at 1075 ("Thus, if the employee's regularly assigned duties require him to divide his time between vessel and land (or platform) his status as a crew member is determined 'in the context of his entire employment' with his current employer."); but see Sikorski v. Halliburton Energy Servs., Inc., 2005 WL 1574443, at *2 (E.D. La. Apr. 4, 2005) (where plaintiff's employment was terminated after his accident and his pre-accident time did not meet the 30% threshold, court would not consider any general expectation of future employment to assist plaintiff in reaching the 30% threshold). To the extent Sodexo would argue that Hammett's employment duties changed after the accident, Sodexo has pointed to no evidence of such in the record.

for a caterer on land.  Rec. Doc. 24-2, at 16 (Hammett's deposition testimony).  This post-accident time spent aboard the West Sirius adds an additional roughly seven months to his employment, meaning that the record evidence suggests he spent just under 30% of his employment with Sodexo aboard the West Sirius.[4]  Sodexo's senior vice president avers in an affidavit that Sodexo employees were "assigned on a call-out basis to different jobs for customers that were contracted by" Sodexo and that "Hammett was not permanently assigned to the WEST SIRIUS as a cook."  Rec. Doc. 24-3, at 1-2.  However, that Hammett continued working on the West Sirius after his accident creates a factual issue concerning the permanency of his assignment to that vessel, and given that the discovery deadline is not until August 2012, additional facts bearing on the nature of this work assignment could be uncovered.

　　　　The present case is similar to Parker v. Jackup Boat

---

[4] Sodexo work records reflect that Hammett started working on the West Sirius on September 20, 2010.  Rec. Doc. 24-3, at 66.  This means that Hammett worked for approximately 2.5 months aboard the West Sirius until his accident on December 3, 2010.  From December 20, 2010 to July 29, 2011, Hammett spent an additional roughly 7 months on the vessel, for a total of 9.5 months on the West Sirius while working for Sodexo.  Although Hammett worked approximately 26 months for Sodexo prior to his accident, these 7 additional post-accident months, added to the pre-accident 26 months, yields a total employment period of 33 months.  Thus, Hammett's time aboard the West Sirius, expressed as a percentage of his total employment with Sodexo, is 9.5/33 months, or 28.8%.  This figure falls just shy of the 30% threshold, but, as noted, the parties cite no evidence as to what work, if any, Hammett performed after July 2011—the end of the Sodexo work records in the court record.

Service, LLC, 542 F. Supp. 2d 481 (E.D. La. 2008), which Hammett cites. The plaintiff in Parker was a steward who worked for a catering company. The defendant asserted that, during the relevant time period, the plaintiff had worked 26 separate hitches at 17 different locations owned by 11 different companies. Id. at 490. The only time the plaintiff had worked on a boat owned by the vessel defendants was during a one-week hitch immediately preceding his accident. Id. The court considered the defendant caterer's affidavit stating that the defendant provided contract labor to various oilfield companies on land-based jobs, fixed platforms, and vessels and assigned its employees to short-term assignments at various locations. Id. at 489. The court focused on the fact that of 433 total days employed, the plaintiff worked 219 days aboard vessels owned and/or operated by Cross Marine. Id. at 490-91. The court stated that the plaintiff's subsequent reassignment to a different vessel was not a fundamental change in status, found that he had a substantial connection to Cross Marine vessels, and granted the plaintiff's motion for partial summary judgment on the issue of seaman status. Id. at 491-92.

  Like the plaintiff in Parker, Hammett worked for a catering company on a mix of land sites, platforms, and vessels. The

plaintiff in Parker had spent over half his time on vessels under common control and/or ownership; Hammett spent roughly 14 out of 33 months aboard one vessel, the Achiever.  Moreover, there is a genuine issue concerning whether Hammett meets the 30% threshold as to the time he spent on the West Sirius.[5]  The Court holds that there are genuine issues of material fact regarding whether Hammett is a seaman.  Sodexo's motion must be denied.

## C. Claims Against Seadrill

Seadrill moves for dismissal of all claims against it. Thus, the Court turns to the claims levied against Seadrill.

---

[5] Sodexo appears to argue in its reply memorandum that because Sodexo did not own or control the vessels at issue, Hammett is not a seaman.  The Fifth Circuit in Roberts v. Cardinal Services, Inc., 266 F.3d 368, 377 (5th Cir. 2001), cert. denied, 535 U.S. 954 (2002), stated that "when a group of vessels is at issue, a worker who aspires to seaman status must show that at least 30 percent of his time was spent on vessels, every one of which was under his *defendant-employer's common ownership or control*" (emphasis added). In an unpublished decision, the Fifth Circuit in Willis v. Fugro Chance, Inc., 278 F. App'x. 443, 447 (5th Cir. 2008), cited to Roberts in denying seaman status to a plaintiff whose employer "neither owned nor exercised control over any of the vessels upon which [the plaintiff] worked."  However, the Court finds persuasive other decisions interpreting Roberts and Willis, to the effect that the employer need not own or control the vessel to which an alleged seaman claims a substantial connection.  See, e.g., Jenkins v. Aries Marine Corp., 554 F. Supp. 2d 635, 640 (E.D. La. 2008) (interpreting Roberts as meaning that the 30% threshold cannot be reached via a combination of employer-controlled and third-party vessels); Alex v. Wild Well Control, Inc., 2009 WL 1507359, at *5 (E.D. La. May 28, 2009) (distinguishing Roberts and Willis, and stating, "There is no basis to find that a sea-based worker, on an identifiable fleet of vessels subject to common ownership or control, must work on vessels owned or controlled by the defendant-employer in order to qualify as a seaman."); cf. Parker, 542 F. Supp. 2d at 491 (post-Roberts, stating, "The employer need not be the owner or operator of the group of vessels.") (citing Coats v. Penrod Drilling Corp., 5 F.3d 877, 890 (5th Cir. 1993)).

1.  **General Maritime Law Negligence**

It is arguably unclear whether Hammett intends to pursue a general maritime law negligence claim against Seadrill. In his opposition to Seadrill's motion, Hammett states that Seadrill "appears to have misconstrued the claims against it. It is not plaintiff's position Seadrill had operational control over Sodexo and was therefore liable for any negligence of Sodexo. Instead, plaintiff's claims against defendant under general maritime law relate to the unseaworthiness of defendant's vessel, the WEST SIRIUS." Rec. Doc. 27, at 4. The Court declines to read this statement as a concession of any negligence claim against Seadrill. Fairly read, the statement is that Hammett is not arguing negligence based on a particular theory—liability of Seadrill for *Sodexo's* negligence. Furthermore, the complaint alleges that Hammett's injuries resulted from the "negligence of the Defendants"—plural. Rec. Doc. 1, at 2.

The Court finds that summary judgment is not appropriate on any negligence claim asserted against Seadrill. Even if Seadrill did not retain operational control over the work performed by Sodexo employees aboard the West Sirius, this does not preclude a possible cause of action for the "direct" negligence of Seadrill. Although Seadrill states that Sodexo provided the cutlery as

contemplated by the WWFA, Hammett's contention that Seadrill provided the meat cleaver creates a genuine dispute.  <u>See</u> Rec. Doc. 27-3, at 1 (Sodexo "Safety Alert" stating that the meat cleaver "came with Rig"); Rec. Doc. 28-3, at 2 (Hammett's affidavit that the meat cleaver was provided by Seadrill). Hammett testified during his deposition that the meat cleaver was not an ideal tool for cutting chickens, but it was the tool in the galley that was best suited for accomplishing the task.[6] Given the evidence in the record, there is a genuine issue as to whether Seadrill was negligent in failing to provide cutlery adequate for a task preparatory to the cooking that Seadrill surely knew would be performed in a galley aboard one of its vessels.  There appear to be other factual issues concerning the type of protective hand gear available to Hammett, as well.  The negligence claim against Seadrill survives summary judgment.

### 2. Jones Act Negligence and Maintenance and Cure

In light of the Court's holding that there is a genuine dispute over whether Hammett is a seaman, there is the possibility of his recovery under the Jones Act and for

---

[6] <u>See</u> Rec. Doc. 24-2, at 31, 34.  When asked why he used a cleaver instead of one of the eight-inch knives, Hammett replied that "it was the better of the two – two evils, I guess.  It was in the best condition of everything that was provided at the time." <u>Id.</u> at 31.  He stated that if they were available, he would have used "cutting shears." <u>Id.</u> at 34.

17

maintenance and cure.  <u>Simms v. Valley Line Co.</u>, 709 F.2d 409, 411 (5th Cir. 1983) ("[T]he Jones Act . . . applies *only* to seamen . . . ."); <u>Hall v. Diamond M Co.</u>, 732 F.2d 1246, 1248 (5th Cir. 1984) ("Only seamen are entitled to the benefits of maintenance and cure.").  However, Hammett concedes that Seadrill is not his employer, which warrants dismissal of his Jones Act and maintenance and cure claims against Seadrill.  Specifically, Hammett states in his opposition to Seadrill's motion, "It is uncontested Seadrill was not Mr. Hammett's employer and therefore Mr. Hammett's Jones Act claims are inapplicable to Seadrill."  Rec. Doc. 27, at 3.  In light of this admission, even if Hammett is a seaman, any claim under the Jones Act against Seadrill must be dismissed.  Curiously, Hammett in his complaint alleges that both Sodexo and Seadrill have failed to pay adequate maintenance and cure. Rec. Doc. 1, at 3.  However, because Hammett does not dispute that Seadrill is not his employer, any maintenance and cure claim against Seadrill must be dismissed.  <u>See</u> <u>Complaint of Liberty Seafood, Inc.</u>, 38 F.3d 755, 758 (5th Cir. 1994), <u>cert. denied</u>, 514 U.S. 1109 (1995) ("The seaman may claim maintenance and cure only from its employer . . . .").

    **3. Unseaworthiness**

As the owner of the West Sirius, Seadrill owed Hammett the

18

duty to furnish a seaworthy vessel.  See Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549 (1960).  A vessel is unseaworthy if its owner "has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it is to be used." Jackson v. OMI Corp., 245 F.3d 525, 527 (5th Cir. 2001).  A claim of unseaworthiness can be made concerning "an unsafe method of work, such as the failure by a shipowner to provide adequate equipment for the performance of an assigned task." Johnson v. Offshore Express, Inc., 845 F.2d 1347, 1354-55 (5th Cir. 1988), cert. denied, 488 U.S. 968 (1988).  As already noted, there is a genuine issue of fact as to who provided the meat cleaver that injured Hammett.  See Rec. Doc. 27-3 (safety alert stating that the meat cleaver "came with Rig").  A Sodexo safety alert indicates that the camp boss determined the cleaver to be unsafe but did not remove it from the worksite.  Id.[7]  As previously noted with respect to the general maritime law negligence claim, there is a genuine issue regarding the appropriate cutlery for cutting chickens to provide the necessary sharpness while also providing operational safety,

---

[7] Equipment brought aboard by someone other than the vessel owner can create an unseaworthy condition for which the owner is responsible.  See Sandoval v. Mitsui Sempaku K.K. Tokyo, 460 F.2d 1163, 1166 (5th Cir. 1972) (where defective cable was brought on board to aid in navigation and became part of ship's tackle, vessel owner became "absolutely responsible for any unseaworthy condition created by it").

the absence of which allegedly caused Hammett's injury. Additionally, the complaint alleges that Hammett's employer failed to provide Hammett with personal protective equipment and gloves. Rec. Doc. 1, at 2. The unseaworthiness claim against Seadrill survives summary judgment.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Seadrill's motion for summary judgment (Rec. Doc. 23) is **GRANTED IN PART and DENIED IN PART**. The motion is **GRANTED** insofar as Hammett's Jones Act and maintenance and cure claims against Seadrill are **DISMISSED WITH PREJUDICE**; and the motion is **DENIED** as to Hammett's negligence and unseaworthiness claims against Seadrill.

**IT IS FURTHER ORDERED** that Sodexo's motion for summary judgment (Rec. Doc. 24) is **DENIED**.

New Orleans, Louisiana, this 12th day of April, 2012.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE